**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| THOMAS "TOMI" JENKINS, <br><br> Plaintiff, <br><br> v. <br><br> 7GROUP MANAGEMENT AND ENTERTAINMENT SERVICES LLC, *et al.*, <br><br> Defendants. <br><br> 7GROUP MANAGEMENT AND ENTERTAINMENT SERVICES LLC, *et al.*, <br><br> Counter Claimants, <br><br> v. <br><br> THOMAS "TOMI" JENKINS, <br><br> Counter Defendant. | Case No. 2:21-cv-01835-RFB-EJY <br><br> **ORDER** |

Before the Court is Plaintiff-Counter Defendant Thomas "Tomi" Jenkins' combined Second Motion for Summary Judgement and Motion to Dismiss (ECF No. 82) and Defendant-Counterclaimants 7Group Management and Entertainment Services LLC ("7Group LLC"), The Seven Group, Inc. also known as 7Group Entertainment ("7Group Inc."), and Lawrence "Larry" Blackmon's Motion for Partial Summary Judgement (ECF No. 83). For the following reasons, the Court grants Defendants' Motion and grants-in-part and denies-in-part Plaintiff's Motion.

**I.    PROCEDURAL HISTORY**

Jenkins filed a complaint in the Eighth Judicial District Court on July 28, 2021. ECF No. 1-1. 7Group LLC removed to this Court on October 5, 2021. ECF No. 1.

On November 30, 2021, 7Group LLC filed a Motion to Dismiss, which the Court denied on September 14, 2022. ECF Nos. 9, 24, 27. On September 23, 2022, the Court granted the Parties' scheduling and discovery plan, with discovery due on February 27, 2023. ECF No. 29. On September 30, 2022, 7Group LLC filed an Answer to Plaintiff's Complaint, asserting counterclaims against Jenkins. ECF No. 31. On October 21, 2022, 7Group LLC and Blackmon filed an amended Answer. ECF No. 32. On November 11, 2022, Jenkins moved to dismiss the counterclaims. ECF Nos. 33-35. On July 24, 2023, after full briefing, the Court denied the motions without prejudice as moot and granted Plaintiff leave to file an Amended Complaint. ECF No. 49. Discovery was briefly reopened. ECF No. 51.

On August 7, 2023, Jenkins filed an Amended Complaint. ECF No. 53. On August 14, 2023, Defendants filed an Answer and counterclaims. ECF No. 56. On August 31, Jenkins answered the counterclaims. ECF No. 57. On December 14, 2023, Plaintiff and Defendants filed cross motions for summary judgment. ECF Nos. 62, 63. Plaintiff's motion for summary judgment also included a motion to dismiss the counterclaims. Id. The motions were fully briefed. ECF Nos. 66, 67, 70, 71. The Court held a hearing on September 3, 2024. ECF No. 76.

On September 30, 2024, the Court issued a Minute Order finding that the briefing of the parties was incomplete as to multiple essential issues including: (1) the extent of declaratory relief sought in terms of termination or partial breach; (2) the specific damages sought by either party as to each claim and counterclaim and the basis for those damages; (3) whether specific performance is being sought; and (4) the extent to which the stipulated permanent injunction as to Thomas Jenkins filed in Leftenant v. Blackmon, 18-cv-1948-EJY impacts the scope of damages and availability of specific performance requested. ECF No. 78. The Court denied the pending motions without prejudice. ECF No. 78. On October 15, 2024, the Court held a status conference on these issues and ordered a briefing schedule for refiling the summary judgment motions. ECF No. 81.

On November 8, 2024, Plaintiff Jenkins refiled his combined Motion for Summary Judgment and Motion to Dismiss. ECF No. 82. As of December 13, 2024, Jenkins' Motion was fully briefed. ECF Nos. 86, 90. Also on November 8, 2024, Defendants filed their Partial Motion for Summary Judgment only on Plaintiff's first claim for breach of contract and as to their second

affirmative defense of waiver. On June 18, 2025, the Court held a hearing on the Motions and took them under advisement.

The Court's Order on the pending Motions follows.

## II.    FACTUAL BACKGROUND

The Court finds the following facts to be undisputed.

Jenkins and Blackmon are among the original founding members of the musical group CAMEO. Blackmon is the only remaining founding member still in CAMEO. Blackmon acted in a leadership role for CAMEO. Blackmon also employed Katheryn Fain also known as Katheryn Jones ("Fain"), who was not a member of CAMEO, as an independent contractor for Blackmon and his various organizations.

7Group Inc. was a Florida corporation that was administratively dissolved by the state of Florida in September of 2014. Blackmon was the sole owner in control of 7Group Inc.

CAMEO secured a residency at the Westgate Resort and Casino in Las Vegas, Nevada which commenced in or around March of 2016. On February 23, 2016, Fain sent Jenkins copies of a proposed contract entitled Performance Agreement ("PA"). In the email that attached the agreements, Fain wrote "Tomi[,] Please check your email, I have sent to you the agreements that LB [Larry Blackmon] has requested everyone sign[.] You can electronically sign them and return. Please note that LB said to make sure to include the following note from him." The following message was included in the email

> Gentlemen,
>
> I must apologize for not detailing this agreement out. Here's the gist.
>
> As a result of a few things that have happened in past matters (i.e.) Like Nathan misleading customers by use of name/logo/likeness etc costing me a great deal personally in Legal costs etc. [. . .] We have to protect the brand . . . as well as 7Group etc, which in fact is to protect us all being the responsible folks. As a result the agreement attached touches base on matters generally and that concern the Las Vegas Residency for the duration there.
>
> There are a couple of things that really don't relate to us and language that don't at all [sic.] but the attorney created the document

- 3 -

> to cover it legally,
>
> …. Just sign the basic agreement. All this directly relates to the show nothing else.
>
> ***NOTHING IN THIS AGREEMENT PREVENTS ANY ACTIVITY OUTSIDE OTHER THAN CAMEO…THIS AGREEMENT HAS NOTHIN TO DO WITH STUDIO/SONGS RECORDING, RIGHTS OR ANYTHING CREATIVE. AGAIN, THIS PROTECTS ALL ENTITIES PUTTING THIS SHOW ON.
>
> -THANKS,
> LB

Fain signed the email, including "7GroupEntertainment Inc./Cameo Music Int. Inc" in her signature. Jenkins signed the PA that day. Blackmon executed the agreement on behalf of "7Group," which at the time was not an entity. The date Blackmon executed the PA is unclear from the record.

**Paragraph 1** of the PA provided "'Productions' hereby engages 'Artist' as a musical performer during the live performances of the band p/k/a/ Cameo from the date hereof until such services are terminated by Productions (the "Shows"). The Shows shall take place at such times and places as are designated by Productions . . . Notwithstanding the foregoing, Productions shall have the right to terminate this agreement and the Artist's services hereunder in the event the Shows are terminated or cancelled for any reason or in the event Artist fails to perform his services to Productions' satisfaction."

**Paragraph 3** of the PA provided "in full consideration of the Artist's [Jenkins] services and all rights granted hereunder, "Productions" agrees to pay to the Artist the sum of $1,000 per week; plus transportation, hotel/housing accommodations, (2) meal vouchers daily on show days in such manner as "Productions" and the "Artist" shall agree.

**Paragraph 5(g)** of the PA contained a provision stating "the Artist warrants and represents" that "the Artist shall have no interest in any trademark, trade name, or other indicia relating to 'Productions,' the band 'Cameo' and/or Larry Blackmon, including the right to utilize name 'Cameo,' and shall not use such in any manner, whether during or after the term hereof." Plaintiff attests he was not aware that this provision restricted his ownership rights in the CAMEO band name.

**Paragraph 6(a)** provided "this agreement contains the entire understanding of the parties relating to its subject matter. No change or termination of this agreement will be binding upon the 'Artist' or 'Productions' unless it is made by an instrument signed by the parties hereto. A waiver by either party of any provision of this agreement in any instance shall not be deemed to waive it for the future. . . Except for termination for cause pursuant to paragraph 1 above, neither party shall be deemed in default or breach this agreement unless such party is given notice thereof and same is not cured within thirty (30) days following receipt of such notice."

The CAMEO residency at Westgate began on March 2, 2016.

Subsequently, on April 12, 2016, Blackmon formed 7Group LLC as a Nevada corporation to manage CAMEO's live performances. Blackmon employed Fain to manage 7Group LLC. Fain signed the Articles of Incorporation as organizer and was designated as a managing member of the LLC. Blackmon however was the sole member and controlled its operations.

During at least some of the weeks of the residency in which Jenkins performed, he was paid in cash installments by a Mr. Bruno Wheeler at the rate of $200 per show. For at least some of these payments, Jenkins signed payment receipts from "7Group Entertainment."

In February of 2017, Fain had a telephone conversation with Jenkins in which she informed him that the Westgate residency had ended.

In October 2018, other former CAMEO members Nathan Leftenant, Gregory Johnson, Jeryl Bright, and Arnett Leftenant sued Blackmon *inter alia* alleging he owed them royalties and seeking declaratory relief that they were co-owners in the CAMEO trademark. See Leftenet v. Blackmon, Case No. 2:18-cv-01948-EJY (D. Nev.) ("the Companion Case").

In November of 2018, Jenkins sent Blackmon a letter expressing his frustration regarding SoundExchange Royalties related to past albums by CAMEO.

In 2018, Jenkins wrote the following resignation letter to Blackmon:

> Larry,
>
> I have known you personally and professionally for 46 years. [. . .] Which makes what I have to say very difficult.
>
> The revelation of malfeasance on your part as it concerns the SoundExchange situation has irrevocably damages [sic] our life long friendship as well as our working relationship.

> You were the boss. Your job was to make sure that everyone in your charge were alright. Instead of distributing the money you received to the musicians who were very rightfully entitled to it from SoundExchange, you lined your pockets for 3 straight years. [. . .] So with all that, this is my formal letter of resignation. I can no longer stand on any stage with you again.
>
> May God have mercy on your soul.
>
> t.

At no point in the letter did Jenkins contend he was owed money under the PA or for work done during the Westgate residency.

On April 30, 2019, the Companion Case plaintiffs sought to add Jenkins as a plaintiff on three claims, including the claim for declaratory relief regarding their co-ownership of the CAMEO trademark, as well as royalties owed.

On August 15, 2019, Companion Case counsel Frederick Samuels sent Jenkins Companion Case counsel Lita Rosario a letter. Samuels included a copy of the PA, expressed his belief that "Jenkins' attempt to join the Fifth Cause of Action . . . seeking a declaration of co-ownership of the CAMEO trademark is a clear breach of the Performance Agreement[,]" and requested curative action.

On August 26, 2019, Rosario wrote back to Samuels. She indicated that "this letter will serve as a notice of breach of the Performance Agreement . . . due to 7Group's failure to pay Jenkins $1,000 per week as required by . . . the Performance Agreement for the period February 23, 2016 to November 2018" and requested curative action.

On September 6, 2019, the court granted the request to add Jenkins as a Plaintiff in the Companion Case.

On September 19, 2019, Rosario wrote to Fain and Samuels indicating that the breach of the PA was due to the failure to pay $1,000 per week from February 2016 to the present and demanded payment.

On April 11, 2023, Jenkins and Blackmon entered a stipulated judgement in the Companion Case addressing the trademark dispute, which the court entered. See Case No. Case No. 2:18-cv-01948-EJY, ECF No. 407. Pursuant to the stipulated judgment, Jenkins was permanently enjoined

from infringing or commercially exploiting the trademark CAMEO, except that Jenkins may describe himself as "formerly of CAMEO" and otherwise indicate his former association with the band, including his appearance on existing CAMEO recordings, etc. Id.

### III. LEGAL STANDARDS

Both the dismissal standard under Federal Rule of Civil Procedure 12(b) and the summary judgement standard under Rule 56 are relevant here.

#### A. Dismissal

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. APT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action. " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

#### B. Summary Judgement

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, it is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

"[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party." Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014).

## IV. DISCUSSION

The Court now turns to the merits of the parties Motions. After considering the terms of the PA, the Court addresses Defendants' Motion before turning to Jenkins' Motion.

### A. The Performance Agreement

The PA states that it is between "Thomas M. Jenkins" referred to as "Artist" and "7Group" referred to as Productions. The agreement is three pages. Jenkins' signature appears at the bottom of each page. Jenkins signed under Artist and Blackmon signed under Productions.

In Nevada, the objective of interpreting contracts is to discern the intent of the contracting parties. Am. First Fed. Credit Union v. Soro, 359 P.3d 105, 106 (Nev. 2015). "[W]hen a contract is clear, unambiguous, and complete, its terms must be given their plain meaning[.]" Ringle v. Bruton, 86 P.3d 1032, 1039 (Nev. 2004). The Court finds that the PA is clear and unambiguous. Three aspects of the PA are particularly relevant here.

First, the opening provisions of the PA review the consideration exchanged. In paragraph

one, Productions agrees to engage "Artist as a musical performer during the live performances of the band p/k/a Cameo from the date hereof until such services are terminated by Productions (the 'Shows')." By its plain terms, the Court finds that the term "Shows" includes but is not limited to the Westgate residency. In paragraph two, Artist agrees to perform, surrender "all rights of every kind in and to the results and proceeds of the 'Artist's' services and performances rendered during the Residency Shows . . . ." In section three, "[i]n full consideration of the Artist's services and all right granted hereunder, 'Productions' agrees to pay Artist the sum of $ 1,000.00 per week" plus miscellaneous benefits. Productions reserves "the right to terminate this agreement and the Artist's services hereunder in the event the Shows are terminated or cancelled for any reason or in the event Artist fails to perform his services to Productions' satisfaction."

Second, in paragraph five, Artist "warrants and represents that" *inter alia* Artist "shall have no interest in any trademark, trade name or other indicia relating to 'Productions,' the band 'Cameo,' and/or Larry Blackmon, including the right to utilize name [sic] 'Cameo' and shall not use such in any manner, whether during or after the term hereof."

Third, paragraph six discusses changes to the agreement, breach, waiver, and termination. It provides that (1) "[n]o change or termination of this agreement will be binding upon the 'Artist' or "Productions' unless" made in a writing signed by both parties; (2) waivers by either party of any right shall not be deemed a waiver of that right in the future; and (3) provides a notice-and-cure provision. Under the notice-and-cure provision, except for termination for cause pursuant to [paragraph one] above, neither party shall be deemed in default or breach this agreement unless such party is given notice thereof and same is not cured within thirty (30) days following receipt of such notice."

With that understanding, the Court now addresses the merits of the motions.

### B. Defendants' Motion for Summary Judgement

The Court begins with Defendants' partial Motion for Summary Judgement. Defendants argue that Jenkins' claim that either or both Blackmon and/or 7Group LLC breached the PA must fail because: (1) Jenkins committed the first material breach by joining the Companion Case, (2) by accepting less than $1,000 per week, Jenkins modified the PA or waived his right to additional

monies, or (3) Jenkins is estopped from bringing this claim. Defendants provide other arguments which may cabin liability in the event the Court finds breach. Because the Court agrees with Defendants that Jenkins committed the first-in-time breach of the PA, the Court declines to consider other arguments.

In Nevada, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). It requires (1) a valid contract, (2) breach by the defendant, and (3) resulting damage. Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Saini v. Int'l Game Tech., 434 F.Supp.2d 913, 919–20 (D. Nev. 2006) (citing Richardson v. Jones, 1 Nev. 405, 408 (1865)). The parties do not dispute, and the Court finds it clear that the PA constitutes a valid contract, formed through offer, acceptance, mutual assent, and consideration. See May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005). The Court has already determined the language of the PA is unambiguous. See Dickenson v. State, Dep't of Wildlife, 877 P.2d 1059, 1061 (Nev. 1994) ("If there is an ambiguity requiring extrinsic evidence to discern the parties' intent, summary judgment is improper."). The Court now turns to the question of breach.

Defendants argue Jenkins violated the terms of the PA by joining the Companion Case in April 2019, because under the PA, Jenkins both surrendered any right he had in the CAMEO trademark and agreed not to pursue such a right in the future. They argue the August 15, 2019 letter provided the requisite notice and, and when Jenkins failed to cure within 30 days, he breached the PA. Jenkins argues Defendants first breached in 2016, by consistently underpaying Jenkins. There is no dispute Jenkins first provided notice of such a violation in his counsel's August 26, 2019 and September 6, 2019 letters. Similarly, Defendants failed to cure.

The Court finds both Parties are correct that their complained-of conduct constitutes a violation of the plain terms of the PA. Under unambiguous terms, Jenkins surrendered any present right in the CAMEO trademark and warranted to not seek such rights in the future. Similarly, Productions was bound to pay Jenkins at the rate of $1,000 per week. Either violation would be material. See Cain v. Price, 415 P.3d 25, 29 (Nev. 2018). In a case of mutual breach of contract, it is well settled that "the party who commits the first breach of a contract cannot maintain an action

against the other for a subsequent failure to perform." Bradley v. N.C.O. Ry., 178 P. 906, 908 (Nev. 1919). The non-breaching party "is both excused from its contractual obligation and entitled to seek damages for the other party's breach." Cain, 415 P.3d at 29 (Nev. 2018). Therefore, the question is which violation matured into a breach of contract first.

The Court agrees with Defendants that Jenkins breached the PA first. As discussed above, the PA required notice of an alleged breach and a thirty-day opportunity to cure before a either party could be considered in breach of the agreement. Where a contract has a valid notice-and-cure provision, a party must comply with that provision as a condition precedent to their breach of contract claim maturing. Main St. Invs. III, LLC v. HUDL Brewing Co., LLC, 550 P.3d 848 (Nev. App. 2024) (rejecting the argument that material breaches are excluded from a notice-and-cure provision) (citing L.K. Comstock & Co. v. United Engs. & Consts. Inc., 880 F.2d 219, 230-31 (9th Cir. 1989) (applying Arizona law and finding that a notice-and-cure provision was enforceable and was required as written as long as a cure within the contract's specified 30-day cure period was possible)). Here, Defendants won the race to notify by less than two weeks. Nevertheless, the Court finds their breach of contract claim matured first, defeating Jenkins' second-in-time notice of breach.

Because Jenkins' breach of contract claim fails on breach, the Court need not consider damages. See Cain, 415 P.3d at 29.

### C. Plaintiff's Motion for Summary Judgement and Dismissal

Finally, the Court turns to Jenkins' Motions. He seeks summary judgement in his favor on each of his claims and dismissal of Defendants' counter claims.

#### i. *Summary Judgement on Jenkins' Claims*

Jenkins seeks summary judgment in his favor on his three claims: (1) breach of contract, (2) declaratory relief regarding the effect of the PA, and (3) declaratory relief regarding Blackmon's liability. Because the Court has already found in Defendants' favor on Jenkins' breach of contract claim, only Jenkins' declaratory relief claims need be addressed here. In Nevada, the requirements for declaratory relief are: "(1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting

it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination." Kress v. Corey, 189 P.2d 352, 364 (Nev. 1948) (citation omitted).

Both of Jenkins' declaratory relief claims are premised upon the PA being either breached by Defendants or remaining enforceable. He requests the Court declare that under the PA: (1) Defendants have no right to use or exploit Jenkins' name, voice, likeness, or proceeds of Jenkins' services under the PA unless he is paid $1,000 per week; (2) that the PA no longer prohibits him from using the name CAMEO unless he is paid $1,000 per week; and (3) that Blackmon is liable under the PA as the alter ego of 7Group LLC. Defendants counter that because Defendants did not breach the PA, Jenkins should be denied declaratory relief. Defendants further argue that Jenkins is effectively seeking a partial recission of the PA to return rights forfeited under it.

The Court finds declaratory relief is improper, as the Court has already determined there has been a material breach of the PA. Thus, Defendants are discharged from performance and entitled to seek damages. Cain, 415 P.3d at 29 ("[O]ne party's material breach of its promise discharges the non-breaching party's duty to perform."). Upon Defendants' seeking damages for breach, the PA was terminated. See id. (citing Restatement (Second) of Contracts § 237 cmt. a, illus. 1 (Am. Law Inst. 1981) (illustrating such as a claim for total breach)); Fuller v. United Elec. Co., 273 P.2d 136, 138 (Nev. 1954) (holding what "[t]he breach was a total breach and was so treated by plaintiff" the underlying contract "was thereby terminated."); see also Bell v. Leven, 90 P.3d 1286, 1288 (Nev. 2004) ("[A]s a matter of public policy, courts should avoid construing contracts to impose a perpetual obligation[.]"). Jenkins' claims for declaratory relief each turn on the presence of a valid, presently enforceable contract; therefore, each basis fails for want of both a "legal interest" or a controversy "ripe for judicial determination." Kress, 189 P.2d at 364. Further, Jenkins' relief related to the CAMEO trademark is mooted by the presence of a subsequent permanent injunction issued in the Companion Case by the Honorable Judge Elayna J. Youchah, United States Magistrate Judge, that governs the Jenkins' rights to use the CAMEO trademark. See No. 2:18-cv-01948-EJY, ECF No. 407 (D. Nev. April 11, 2023).

For the foregoing reasons, and because the Court finds Jenkins had a "full and fair opportunity to prove [his] case," the Court *sua sponte* grants summary judgement for Defendants on Jenkins' declaratory relief claims. Kress, 189 P.2d at 364.

### ii. *Dismissal of Defendants' Counter Claims*

Jenkins also seeks the dismissal of each of Defendants counter claims. Defendants bring four counter claims: (1) fraudulent inducement/fraudulent concealment on behalf of both Defendants, (2) breach of the PA by 7Group LLC, (3) third party beneficiary/breach of PA by Blackmon, and (4) declaration of ratification and novation by Blackmon.

#### 1. Compulsory Counter Claims

As a threshold matter, Jenkins argues the Companion Case bars Blackmon from bringing his counterclaims in this action.[1] In that case, he argues Blackmon relief upon the PA to establish that Jenkins had no ownership right in the Cameo trademark. In her summary judgement order, Judge Youchah determined the plain language of the PA was a "waiver of Jenkins' trademark rights going forward" but not a "retroactive waiver." See No. 2:18-cv-01948-EJY, ECF No. 328 at 20-21 (D. Nev. March 4, 2022). Therefore, Judge Youchah determined that Jenkins was a co-owner of the CAMEO trademark through the date of the PA. Finally, Judge Youchah concluded:

> "As for Jenkins' co-ownership of the CAMEO marks after he signed the [PA], the parties dispute whether 7Group breached the contract and relieved Jenkins of any obligations thereunder . . . . [u]ntil this dispute is resolved, which cannot be done on summary judgement because there is insufficient evidence to eliminate questions of fact regarding the alleged breach by [Blackmon], there remains a disputed issue of material fact regarding whether Jenkins had any ownership interest in the CAMEO marks after he signed the PA."

Id. at 21. With that understanding, the Court now considers the parties' arguments.

---

[1] In addition to his arguments under Federal Rule of Civil Procedure 13(a), Jenkins also briefly argues Blackmon is collaterally estopped by Judge Youchah's summary judgement opinion in the Companion Case. Among other things, Nevada law provides that collateral estoppel requires that "the issue decided in the prior litigation must be identical to the issue presented in the current action." Univ. of Nev. v. Tarkanian, 879 P.2d 1180, 1191 (Nev. 1994); LaForge v. State ex rel. Univ. 7 Cmty. College Sys., 997 P.2d 130, 133 (Nev. 2000). First, as discussed below, Judge Youchah expressly declined to decide the issue of breach of the PA. Second, Jenkins' argument that Judge Youchah determined the PA's waiver of trademark rights was prospective rather than retrospective is not particularly relevant to the issues here—that is, the Court finds that it is not "identical" to the issues presented in this case.

Jenkins argues that Blackmon's counter claims were compulsory in the Companion Case and should have been pleaded there. Blackmon argues that his present counter claims were not compulsory in the prior action as they were not logically related to the Companion Case. Under Federal Rule of Civil Procedure 13(a) a "pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." "Federal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action" In re Crown Vantage, Inc., 421 F.3d 963, 973 n.7 (9th Cir. 2005) (citing Cheiker v. Prudential Ins. Co., 820 F.2d 334 (9th Cir. 1987)). Federal courts look for a "logical relationship" between the claims when determining the second prong. Moore v. New York Cotton Exchange, 270 U.S. 593, 610 (1926). "This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Pochiro v. Prudential Ins. Co., 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting Harris v. Steinem, 571 F.2d 119, 123 (2d Cir. 1978)). There is no dispute that Blackmon and Jenkins are the proper parties for the counterclaims at issue and were both parties to the Companion Case. Rather, the dispute centers on whether the present counterclaims arise out of the same "transaction or occurrence" as Jenkins' claims in that case.

The Court agrees with Jenkins. There is a manifest "logical relationship" between Jenkins' Companion Case claim of co-ownership of the CAMEO trademark and Blackmon's counterclaim that, by bringing that very claim, Jenkins violated the PA, harming Blackmon as third-party beneficiary. Indeed, in the Companion Case, Blackmon pointed to the exact construction of the PA he argues to the Court in the present case. Similarly, Blackmon's other counterclaims bear a strong logical relationship to the Companion Case. Whether ratification, novation, or fraud occurred was logically related to the "disputed issue of material fact" that Judge Youchah noted remained following summary judgment. See No. 2:18-cv-01948-EJY, ECF No. 328 at 21. After significant litigation, the Companion Case resulted in a settlement. The Court finds consideration

of finality, judicial economy, and fairness weigh strongly in favor of dismissal of these counterclaims. For these reasons, the Court finds each of Blackmon's counterclaims are barred by Federal Rule 13(a).

Since 7 Group LLC was not a party to the Companion Case, it cannot be precluded from bringing its counterclaims under Rule 13. Accordingly, the Court now considers the sufficiency of 7 Group LLC's remaining counterclaims one and two.[2]

### 2. Counterclaim I: Fraudulent Inducement/Concealment

In the first counterclaim, 7Group LLC argues that Jenkins concealed his belief that, irrespective of the PA, he maintained an interest in the CAMEO trademark. In doing so, 7Group LLC argues that Jenkins either fraudulently induced Defendants to sign the PA or otherwise damaged Defendants as a result of this fraudulent concealment. Jenkins argues that 7Group LLC has failed to plead essential elements of their claim with sufficient particularity.

In Nevada, fraudulent inducement and fraudulent concealment are separate claims. To establish fraud in the inducement, a plaintiff must show "(1) a false representation made by [the defendant], (2) [defendant's] knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation), (3) [defendant's] intention to therewith induce [the plaintiff] to consent to the contract's formation, (4) [plaintiff's] justifiable reliance upon the misrepresentation, and (5) damage to [plaintiff] resulting from such reliance." J.A. Constr. Co. v. Lehrer McGovern Bovis, Inc., 89 P.3d 1009, 1018 (Nev. 2004). In order to bring a fraudulent concealment claim, a plaintiff must show that (1) the defendant concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, that is, he must have concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than he would if he knew the fact; (4) the plaintiff must

---

[2] For purposes of the discussion below, the Court assumes without deciding that 7Group LLC has standing to bring the instant counterclaims, because Blackmon as 7Group LLC's promoter, bound 7Group LLC to the pre-incorporation PA, and after incorporation, 7Group LLC ratified the contract by making payments to Plaintiff. Jacobson v. Stern, 605 P.2d 198, 201 (Nev. 1980). Because the Court finds 7Group LLC's counterclaims are deficient and amendment would be futile, the Court does not resolve any outstanding disputes as to 7Group LLC's status with regards to the PA.

have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and, finally, (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damages. Dow Chem. Co. v. Mahlum, 970 P.2d 98, 110 (Nev. 1998). Both claims sound in fraud and must be pleaded with the heightened particularity required by Federal Rule of Civil Procedure 9(b).

For the following reasons the Court finds 7Group, LLC fails to state its counterclaims. First, the Court finds that 7Group LLC has failed to plead its fraud-based counterclaims with sufficient particularity. To plead with particularity, a party must plead "the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." Swartz v. KPMG, LLP, 476 F.3d 756, 764 (9th Cir. 2007). The circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct alleged so that they can defend against the charge. Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003). There is no dispute that Jenkins did not draft or modify the PA, but rather signed it on the day he received it. There is no specific pleading that Jenkins made any affirmative misrepresentation, or Jenkins specifically failed to disclose a material fact, prior to signing that 7Group LLC could have relied upon.

Second, the Court finds 7Group LLC has failed to properly plead the essential element that a duty to disclose existed. While 7Group LLC rightly identifies that a defendant may be found liable under both theories for suppressing a material fact that the party is bound to disclose, that rule applies only where "an obligation to speak" exists. Villalon v. Bowen, 273 P.2d 409, 414 (Nev. 1954); Nelson v. Heer, 163 P.3d 420, 426 (Nev. 2007). Prior to signing the PA, as litigated in the Companion Case, Jenkins had a reasonable belief that he was a co-owner of the CAMEO trademark. 7Group LLC essentially argues that Jenkins had a duty to disclose his mistaken belief that the PA did not waive his interest in the mark. The Court has identified no authority to support 7Group LLC's position that Jenkins had a duty to disclose his own mistaken understanding of the scope of the contract. See Villalon, 273 P.2d at 414-15 ("[E]even in absence of a fiduciary or confidential relationship and where the parties are dealing at arm's length, an obligation to speak can arise from the existence of material facts peculiarly *within the knowledge* of the party sought

to be charged and not within the fair and reasonable reach of the other party.") (emphasis supplied). In sum, the Court finds that 7Group LLC's fraudulent inducement and fraudulent concealment counterclaims must be dismissed with prejudice, because amendment would be futile.[3]

### 3. Counterclaim II: Breach of Contract

7Group LLC's second counterclaim avers Jenkins' breached the PA by joining the Companion Case. The Court has already determined this constituted breach above. However, Jenkins' argues that 7Group LLC suffered no damage as any damage for breach was suffered by Blackmon personally. 7Group counters that its damages are lost royalties chargeable to Jenkins for the use of the CAMEO trademark. However, it is undisputed and asserted in the counterclaim that "Blackmon is the sole owner of the CAMEO trademark." Accepting that allegation as true, 7Group LLC's identified damages necessarily fail because 7Group cannot have suffered the loss of revenues for a trademark that 7Group itself argues it did not own at the relevant times. Because 7Group LLC claims no other damages, its breach of contract claim fails. See Richardson v. Jones, 1 Nev. 405, 409 (1865) (setting forth the essential elements of Nevada breach of contract, including some damage as a result of the breach).

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff-Counter Defendant Thomas "Tomi" Jenkins' combined Motion for Summary Judgement and Motion to Dismiss (ECF No. 82) is **GRANTED in part and denied in part.** Defendants' counterclaims are **DISMISSED with prejudice**. Summary judgment in favor of Jenkins is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant-Counterclaimants 7Group Management and Entertainment Services, The Seven Group Entertainment, Inc., and Lawrence "Larry" Blackmon's (ECF No. 83) Partial Motion for Summary Judgement on Plaintiff's breach of contract claim is **GRANTED**.

---

[3] Blackmon also raised Counterclaim I. While the Court has already dismissed his counterclaim for fraudulent inducement or fraudulent concealment under Federal Rule of Civil Procedure 13(a), the Court notes that the logic in this section would apply with equal, independent force against his counterclaim, had it not been compulsory under Rule 13.

**IT IS FURTHER ORDERED** that summary judgment in favor of Defendants on Plaintiff's second and third claims for declaratory relief is **GRANTED** *sua sponte*.

The Clerk of Court is instructed to enter judgment accordingly and close this case.

**DATED:** September 29, 2025.

                                        **RICHARD F. BOULWARE, II**
                                        **UNITED STATES DISTRICT JUDGE**